[L.A. No. 27625.   In Bank.   July 11, 1966.]

EMILY E. SAWDAY, Plaintiff and Appellant, v. VISTA
IRRIGATION DISTRICT, Defendant and Respondent.

[L.A. No. 27626.   In Bank.   July 11, 1966.]

VISTA IRRIGATION DISTRICT, Plaintiff and Respondent,
v. EMILY E. SAWDAY, Defendant and Appellant.

(Consolidated Cases.)

Luce, Forward, Hamilton & Scripps, Jack W. Crumley and
James M. Dort for Plaintiff and Appellant and Defendant and
Appellant.

Glenn & Wright and Leroy A. Wright for Defendant and Respondent and Plaintiff and Respondent.

McCOMB, J.—This is an appeal in consolidated proceedings from an order granting arbitration of a lessee's claim for rent reduction with respect to matters arising subsequent to January 1, 1959, and denying arbitration of her claim with respect to matters arising prior to that time.

*Facts*: In 1945, San Diego Water Company, the predecessor of Vista Irrigation District (hereinafter referred to as "the district"), leased approximately 40,000 acres of land for cattle grazing to George Sawday. George Sawday died in 1949, and his successor in interest is Emily E. Sawday (hereinafter referred to as "the lessee"). The original lease was for a term of five years, commencing January 1, 1946, and contained options for two additional five-year terms.

The lessor reserved the right to remove water from the premises. The lease provided that if the lessee was damaged by such removal, the rent, which was payable monthly, should be reduced. It was incumbent on the lessee to make a demand for rent reduction. If the parties failed to agree on the amount of reduction, the matter was to be determined by arbitration.

In 1946, the district purchased the leased premises and other properties from the San Diego Water Company. To finance the purchase, the district issued bonds, under which all revenues to be derived from the properties were pledged for the payment of interest on, and principal of, the bonds.

To the extent that revenues in any year were insufficient to meet bond service requirements, the district was required to levy and collect ad valorem taxes for such purposes. In each of the years from 1956 through 1960, the district's revenue was insufficient, and in each of those years it levied taxes to make up deficiencies.

In 1950, following a prolonged period of drought, the district drilled a number of wells upon the premises and commenced the removal of water for the purpose of supplying the inhabitants of the district.

When the pumping project started in 1950, the lessee informed the district that removal of the water would cause damage to her. In 1953, the lessee's attorney wrote to the district claiming that she had been damaged, and stating, "I will appreciate it if you will give this matter your earliest consideration as I feel that something should be done by way

of reduction of rentals to assist the Lessee under the existing conditions.''

The district replied, denying that the removal of water had caused damage and refusing any rent adjustment. The lessee did not press her claim, but continued to pay the full rent, and thereafter gave notice of the exercise of her option for the final five-year term, commencing in 1955 and expiring December 31, 1960, ''upon the terms and conditions and at the same rent provided in said lease.'' The district continued during all those years to pump and remove water from the premises.

On November 30, 1960, without any previous written demand for rent reduction except that made in 1953, the lessee demanded arbitration of her claimed damage over the entire period in which the district had pumped and removed water, from 1950 to the end of the lease term in 1960.[1]

In notifying the lessee of the appointment of its arbiter, the district expressly reserved the right to contest her claim with regard to any period which might be barred by the statute of limitations.

The district thereafter brought an action for declaratory relief, in which it sought an order terminating the arbitration. The lessee countered with a petition to compel arbitration, and the proceedings were consolidated.

The trial court found that in making the assessments above mentioned the district had relied upon the lessee's continued payment of the full rent; that although the lease did not specify any time within which arbitration should have been demanded, a reasonably prompt assertion of any claim for adjustment of rentals was impliedly required by the terms of the lease and the situation of the parties; and that one year after the year in which alleged damages were claimed to have been incurred was a reasonable time under all the circumstances.

From such findings, the court concluded that the lessee had been guilty of laches operating to the prejudice of the district, so as to waive her right to compel arbitration as to the amount of rent reduction to which she might otherwise be entitled because of damage suffered by her arising out of removal of water prior to January 1, 1959. Arbitration was ordered on the question of damages for the final two years of the lease

---

[1] On October 1, 1960, the district had notified the lessee that her bid for a new lease had been rejected.

term. The right to arbitrate any damages claimed to have occurred prior to January 1, 1959, was denied.

Question: *Did the lessee waive the right to compel arbitration as to matters occurring prior to January 1, 1959?*

*Yes.* The following rules are here applicable:

■ (1) A party to an arbitration agreement can waive his right to arbitrate. (*Local 659, I.A.T.S.E.* v. *Color Corp. of America,* 47 Cal.2d 189, 194-195 [2] [302 P.2d 294]; *Case* v. *Kadota Fig Assn.,* 35 Cal.2d 596, 606 [220 P.2d 912]; *Loscalzo* v. *Federal Mut. Ins. Co.,* 228 Cal.App.2d 391, 396 [4] [39 Cal.Rptr. 437].)

■ (2) Whether there has been a waiver of a right to arbitrate is ordinarily a question of fact, and a finding of waiver, if supported by sufficient evidence, is binding on an appellate court. (*Loscalzo* v. *Federal Mut. Ins. Co., supra,* 228 Cal.App.2d 391, 396-397 [5, 6]; *Bertero* v. *Superior Court,* 216 Cal.App.2d 213, 219 [4] [30 Cal.Rptr. 719]; *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board, Amalgamated Clothing Workers,* 192 Cal.App.2d 268, 277 [6] [13 Cal.Rptr. 446].)

■ (3) Where an arbitration agreement does not specify a time within which arbitration must be demanded, a reasonable time is allowed, and what constitutes a reasonable time is a question of fact, depending upon the situation of the parties, the nature of the transaction, and the facts of the particular case. (Civ. Code, § 1657; cf. *Lyon* v. *Goss,* 19 Cal.2d 659, 673 [5] [123 P.2d 11]; *Stark* v. *Shaw,* 155 Cal.App.2d 171, 177 [2] [317 P.2d 182].)

Section 1281.2 of the Code of Civil Procedure provides: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, *unless it determines that*:

"(a) *The right to compel arbitration has been waived by the petitioner;* or

"(b) Grounds exist for the revocation of the agreement. . . . ." (Italics added.)

■ Although in 1953 the lessee had asked that the district consider granting a rent reduction, and the district refused to grant a reduction, the lessee made no demand for arbitration but continued paying the full amount of the rent.

When the lessee exercised her option in 1955 to renew for an additional period of five years, commencing January 1,

1956, she specified that the renewal was to be upon the terms and conditions, and at the same rent, provided in the lease. She thereafter continued paying the full amount of the rent and made no demand for arbitration until November 30, 1960.

Under the circumstances, in determining the amount of the assessments it had to make in order to meet its bond service requirements, the district was entitled to assume that it would receive the full amount provided by the lease, and the trial court's findings that the lessee should have made her claim for adjustment in rent within one year after the year in which the alleged damages were incurred,[2] that by not doing so she was guilty of laches to the prejudice of the district, and that she therefore waived her right to compel arbitration as to the amount of rent reduction to which she might otherwise be entitled because of damage suffered by her arising out of removal of water prior to January 1, 1959, are amply supported by the record.

Accordingly, under the terms of section 1281.2 of the Code of Civil Procedure, it was proper for the trial court to order arbitration of the lessee's claim with respect to matters arising subsequent to January 1, 1959, and to deny arbitration of her claim with respect to matters arising prior to that time.

The order is affirmed.

Traynor, C. J., Peters, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.

---

[2]This time is well within the four-year period set by the statute of limitations applicable to actions on written contracts. (Code Civ. Proc., § 337.)